**Mark Anthony BROWN, Plaintiff,**

v.

**The NORTH CAROLINA STATE BOARD OF ELECTIONS et al., Defendants.**

**No. C–C–74–123.**

United States District Court,
W. D. North Carolina,
Charlotte Division.

Heard Feb. 28, 1975.

Decided April 16, 1975.

George S. Daly, Jr., Walter H. Bennett, Jr., Casey & Daly, Charlotte, N. C., for Mark Anthony Brown, plaintiff.

Rufus L. Edmisten, Atty. Gen., James F. Bullock, Deputy Atty. Gen., and James

Wallace, Jr., Associate Atty. Gen., Raleigh, N. C., for The North Carolina State Board of Elections, defendant.

H. Patrick Taylor, Jr., Taylor & McLendon, Wadesboro, N. C., for The Anson County Board of Elections, defendant.

## MEMORANDUM OF DECISION

Before CRAVEN, Circuit Judge, and JONES, Chief District Judge and McMILLAN, District Judge.

WOODROW WILSON JONES, Chief District Judge:

The plaintiff, a resident citizen of Anson County, North Carolina, brought this action against The North Carolina State Board of Elections and each of its Members and The Anson County Board of Elections and each of its Members, seeking to have North Carolina General Statute § 163–107 declared unconstitutional and to have its application permanently enjoined insofar as it requires filing fees of candidates for public office in a primary election who are unable to pay such fees. The action is brought under the provisions of 42 U.S.C.A. § 1983; 28 U.S.C.A. § 1343(3) and 28 U.S. C.A. § 2201. Since the state statute is state-wide in its application a three-judge court was convened to hear and determine the matter. 28 U.S.C.A. § 2284.

The following facts have been established by the pleadings and stipulations. The plaintiff resides in the Eighth Congressional District of North Carolina; is more than 25 years of age and has been a citizen of the United States for more than seven years. That on February 22, 1974 he filed with The Anson County Board of Elections a Notice of

his candidacy for election as a Member of the House of Representatives of the United States for the Eighth District of North Carolina in the up-coming Democratic primary. He stated that he was unable to pay the required filing fee and requested that it be waived. The County Board, having no authority or jurisdiction over state-wide or district elections, forwarded the Notice to The State Board of Elections in Raleigh. By letter dated March 5, 1974, the State Board advised the plaintiff that since General Statute § 163–107 specifically requires the payment of a filing fee the Board had no authority to waive the requirement. The plaintiff filed with the court an affidavit of indigency and the defendants do not contest the issue.

The defendants moved to dismiss the action as to The Anson County Board of Elections and its individual Members on the ground that they are not proper parties to this action. This motion will be granted because the state statute requires that candidates for Congress file with the State Board of Elections and the County Board has no authority to accept or reject such applications. General Statute § 163–106. An Order will be entered dismissing the action as to the County Board and its Members.

North Carolina General Statute § 163–107 [1] provides that at the time of filing notice of candidacy in a primary election each candidate shall pay to the Board of Elections a filing fee and in the case of a person filing for Congress the fee shall be 1% of the annual salary or $425.00. The plaintiff contends that the statute arbitrarily restricts access to the primary ballot in North Carolina on the basis of financial ability, serves no valid state interest in limiting the ballot to serious candidates and is violative

[1]. § 163–107. Filing fees required of candidates in primary; refunds.—(a) Fee Schedule.—At the time of filing a notice of candidacy, each candidate shall pay to the board of elections with which he files under the provisions of G.S. 163–106 a filing fee for the office he seeks in the amount specified in the following tabulation:

| Office Sought | Amount of Filing Fee |
|---|---|
| . . . | . . . |
| Members of the United States House of Representatives | One percent (1%) of the annual salary of the office sought— |

of his First and Fourteenth Amendment rights. He contends that he was denied access to the primary ballot during the election of 1974 because he was unable to pay the required filing fee, and that he plans to file for Congress in 1976 but is still unable to pay the fee. The plaintiff further contends that there are no reasonable alternative means of gaining access to the primary ballot.

 The defendants contend that the plaintiff may gain access to the ballot without the payment of a filing fee in the following ways: (1) secure 10,000 signatures of registered voters on a petition to create a political party, G.S. § 163–96, and if he obtains the nomination of such newly created party he would not be required to have a primary and would be placed on the general election ballot, G.S. § 163–98; (2) run as an independent since such candidate may gain access to the general election ballot by petition, G.S. § 163–122; (3) conduct a write-in campaign, G.S. § 163–151(2) (c); and (4) obtain the nomination of either the Democratic, Republican or American Parties and his name would be placed on the general election ballot. The defendants therefore contend that the plaintiff has reasonable alternative means of access to the ballot and cites and relies upon Jenness v. Fortson, 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971).

The trouble with the defendants' position is that it deals with access to the general election ballot and ignores the problem of access to the primary ballot. The plaintiff seeks access to the primary ballot and contends that there is no avenue leading there short of paying the fee which he does not have. A careful reading of the election laws of the state indicates that plaintiff's contention is correct. The write-in provision as well as the other alternative means mentioned by the defendants applies only to the general election ballot.

It would appear that the provision of General Statute § 163–107 requiring a filing fee of only one percent of the an-nual salary of the office sought is reasonable and would not, in these times of inflation, exclude any serious and qualified candidate and would meet constitutional muster. However, the latest decisions of the Supreme Court on this subject indicate otherwise. In Bullock v. Carter, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972), the court held unconstitutional a Texas primary election filing fee system which provided no alternative means of access to the primary ballot. The court found that "Under the Texas statute, payment of the filing fee is an absolute prerequisite to a candidate's participation in a primary election. There is no alternative procedure by which a potential candidate who is unable to pay the fee can get on the primary ballot by way of petitioning voters, and write-in votes are not permitted in primary elections for public office." The court further found and held: "The filing-fee requirement is limited to party primary elections, but the mechanism of such elections is the creature of the state legislative choice and hence is 'state action' within the meaning of the Fourteenth Amendment. Gray v. Sanders, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963)." The Court then proceeded to strike down the Texas statute saying: "Since the State has failed to establish the requisite justification for this filing-fee system, we hold that it results in a denial of equal protection of the laws. It must be emphasized that nothing herein is intended to cast doubt on the validity of reasonable candidate filing fees or licensing fees in other contexts. By requiring candidates to shoulder the costs of conducting primary elections through filing fees and by providing no reasonable alternative means of access to the ballot, the State of Texas has erected a system that utilizes the criterion of ability to pay as a condition to being on the ballot, thus excluding some candidates otherwise qualified and denying an undetermined number of voters the opportunity to vote for candidates of their choice. These salient features of the Texas system are

**362**

critical to our determination of constitutional invalidity."

In Lubin v. Panish, 415 U.S. 709, 94 S.Ct. 1315, 39 L.Ed.2d 702 (1974), the court struck down a California statute which required a filing fee of only one percent of the annual salary of candidates for Congress and other district and local offices wherein there was an absence of reasonable alternative means of ballot access in a primary election. The California statute permitted write-in votes in the primary elections but the write-in candidate was required to pay the filing fee.

The court in *Lubin* as in *Bullock*, recognized "that the State's interest in keeping its ballots within manageable, understandable limits is of the highest order," but held that such "legitimate state interest, however, must be achieved by a means that does not unfairly or unnecessarily burden either a minority party's or an individual candidate's equally important interest in the continued availability of political opportunity. The interests involved are not merely those of parties or individual candidates; the voters can assert their preferences only through candidates or parties or both and it is this broad interest that must be weighed in the balance. The right of a party or an individual to a place on a ballot is entitled to protection and is intertwined with the rights of voters."

The court proceeded to hold in *Lubin:* "Thus California has chosen to achieve the important and legitimate interest of maintaining the integrity of elections by means which can operate to exclude some potentially serious candidates from the ballot without providing them with any alternative means of coming before the voters. Selection of candidates solely on the basis of ability to pay a fixed fee without providing any alternative means is not reasonably necessary to the accomplishment of the State's legitimate election interests. Accordingly, we hold that in the absence of reasonable alternative means of ballot access, a State may not,

consistent with constitutional standards, require from an indigent candidate filing fees he cannot pay." The court then proceeded to note alternative methods which might be used to test the seriousness of candidates and to provide reasonable access to the ballot.

 Since there are no alternative means of access to the primary ballot in North Carolina, this Court is compelled by *Bullock* and *Lubin* to hold that North Caroline General Statute § 163–107, in its present form, is constitutionally invalid. An Order declaring the statute invalid and dismissing the action as to the County Board and its Members will be entered forthwith.

No further relief will be ordered at this time in view of the facts that no primary election for Congress is scheduled in the Eighth District until 1976 and the General Assembly of North Carolina is now in session. Legislative action may very well moot all other demands for relief.